PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAWN GELPI, | ) | |
| | ) | CASE NO. 5:12CV0570 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| AUTOZONERS, LLC, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | [Resolving ECF No. 62] |

Pending is Defendant's Motion for Summary Judgment (ECF No. 62). The Court has been advised, having reviewed the record, the parties' briefs and the applicable law. For the reasons set forth below, the Court grants the motion.

**I. Background**

The stipulated facts (ECF No. 67) are as follows:

1. Gelpi was hired on June 4, 2007 as a customer service representative, which is a Red Shirt position.[1]

2. On November 18, 2007, Gelpi made a lateral move to the position of Commercial Driver.

3. AutoZone Store #720, where Gelpi was employed, had two lines of business, one was commercial and the other was retail sales.

4. On February 4, 2010, Gelpi was promoted to Commercial Specialist, which is a Grey Shirt – management position – overseeing operations in the commercial side of the store.

---

[1] Red Shirt employees are non-managerial level employees.

(5:12CV0570)

5. From February 4, 2010 through Gelpi's termination, Scott Lindsey ("Lindsey") was employed as a Part Sales Manager ("PSM") at Store #720.

6. As a PSM, Lindsey maintained responsibility over the retail sales portion of Store #720.

7. While the employees were technically divided between the retail and commercial sides of the business, all Red Shirt – non-management – employees were to follow the directions of Grey Shirt managers.

8. Gelpi was terminated on or about January 31, 2011.

### A. AutoZoners' Handbook and Policies

9. AutoZoners' employees are employed at-will and all employees confirm their understanding of the employment-at-will relationship.

10. The Handbook also contains a section titled "Problem Solving Procedure."

11. The Handbook also notifies employees that AutoZoners does not have a progressive disciplinary policy.

### B. Gelpi's perceived hostile work environment

12. Gelpi does not allege *quid pro quo* sexual harassment.

13. Gelpi was never touched inappropriately by anyone employed by AutoZoners, nor was she asked to participate in sexual activity in exchange for an employment benefit while employed by AutoZoners.

14. Gelpi alleges that during the nearly four years she was employed at Store #720, she overheard comments of a sexual nature nearly every day.

(5:12CV0570)

15. Gelpi alleges that at least five men (Lindsey; Wayne Seeley ("Seeley"), a PSM; Brian Neiferd ("Neiferd"), a PSM; Robert Pierce, a Red Shirt; Brian Anderson ("Anderson"), a Red Shirt; and Dave Posten ("Posten"), a Red Shirt) would regularly discuss things that ranged from messages on their phones, pictures on their phones, customers who came in the door, trying to get a female customer's phone number while changing a battery at her car, something they saw on television, what bars they frequented, the women they dated, their marriages and sexual relationships with their wives, images they saw on the internet, pornography websites, various articles they read, and e-mails exchanged between Posten, Lindsey, and Seeley.

16. Gelpi alleges that she and a male Commercial Manager, John Arbaugh, would commonly talk about how they were equally offended by the comments made by the other male employees.

17. Gelpi stated that she and several other male and female employees would receive text messages from Lindsey that were of a sexual, or joking nature.

18. Gelpi did not keep any of the allegedly offensive text messages.

19. Gelpi no longer has any of the mobile telecommunications devices that received the allegedly offensive text messages.[2]

20. Gelpi got a new phone on or about February 4, 2010.

21. Gelpi also got a new phone on or about January 11, 2011.

22. Gelpi then upgraded her phone again on October 19, 2011.

23. Gelpi then upgraded her phone to the iPhone 5 around January 17, 2013.

---

[2] ECF No. 65-1 at PageID #: 1070.

(5:12CV0570)

24. Gelpi could recall the following specific instances of allegedly offensive conduct during the four years she was employed at Store #720. (1) According to Gelpi's testimony, Lindsey would brag about being transferred out of a store because he had sex with other female employees. (2) Lindsey mentioned to other men at the Store that his wife caught him watching pornography at home and Gelpi overheard the conversation. (3) Gelpi recounted one female employee who transferred to another Store after her boyfriend – a commercial account holder – became upset that she was sleeping with two employees at Store #720. (4) Gelpi also noted that someone drew a picture on a dry erase board depicting Loren McClain ("McClain"), the Store Manager, and a penis and other drawings, but could not specifically identify the other drawings she observed. (5) Gelpi also stated she heard the men in the front of the store discussing the video "two girls one cup." Gelpi stated the video was "offensive if you're a male or female. It offended the men who worked there too." ECF No. 65-1 at PageID #: 1019.

25. Gelpi also recalled four instances where she observed violent behavior. (1) Seeley was upset by something that happened in the Store and threw parts on a shelf above her head. (2) Lindsey became upset after someone ate his slice of pizza and threw the pizza box into a computer monitor, which fell off a shelf and hit Gelpi in the head. (3) Lindsey became upset with a customer and punched a hole in the wall. (4) Lindsey allegedly punched a hole in the women's bathroom because he wanted to use a clean restroom.

26. According to Gelpi, she reported these incidents to McClain; Kim Berger – former District Manager; Dave Freeman – District Manager; Andy Rottinghouse – former Territory Sales Director; Twila Gunther – former Area Sales Director; Arlen Greber – former Area Sales Director; and Joe Duncan – former Area Sales Director.

(5:12CV0570)

27. On or around January 11, 2011, Gelpi notified Freeman of a text message picture she received showing another employee, Robert Pierce ("Pierce") holding a pickle[3] to his crotch at Store #720 ("Pierce Picture"), that she received while at her home with her family.

28. Gelpi provided two written statements during the Investigation.[4]

29. In her initial statement taken on January 13, 2011 ("Initial Statement"), Gelpi stated that no one at AutoZoners had ever sent her a sexual text message prior to the Pierce Picture.

30. In the Initial Statement, Gelpi wrote that the only text she had ever sent to an AutoZoners' employee that was of a sexual nature was the text she forwarded to Freeman containing the Pierce Picture.

31. Gelpi also stated that she had never sent a text to another AutoZoner employee that was non-work related.

32. As part of the Investigation, AutoZoners also obtained written statements from Lindsey, Seeley, Anderson, and Pierce.

33. Lindsey admitted to sending the Pierce Picture to Gelpi.

34. In his statement, Lindsey was asked to "[p]lease explain in detail if any of the AutoZoners listed above (Tom, Wayne, Keith, Brian or Dawn) sent you a text or showed you a picture of a sexual nature."  Lindsey responded, "Yes.  Tom, Wayne, and Dawn – pictures mainly from Tom & Wayne & a voice of automated phone sex from Dawn – instead of usual two person phone sex it was a male calling in and computer voice playing the counterpart."  *See* ECF No. 63-1 at PageID #: 628-29.

---

[3] Or piece of produce.

[4] AutoZoners immediately launched a Human Resources Investigation ("Investigation").

(5:12CV0570)

35. Following the statement from Lindsey, AutoZoners decided to speak with Gelpi a second time.

36. In the Second Statement Gelpi was asked "On 1-13-11 you were asked whether or not any AutoZoner had sent you a text that was of a sexual nature, why did you answer No to this question?" Gelpi responded "I did not remember sending / receiving this text. As I stated prior it was a very long time ago. And I sent it if I remember correctly because I was asked to." ECF No. 65-6 at PageID #: 1098.

37. In the Second Statement, Gelpi was asked "Is it inappropriate for you or anyone else to forward text messages of a sexual nature to AutoZoners in the workplace?", and she answered "[o]f course, it is." ECF No. 65-6 at PageID #: 1098.

38. In the Second Statement Gelpi was asked "On 1-13-11 you were asked have you ever sent a text message to [an] AutoZoner that was of a sexual nature, your response was Dave Freeman, why did you answer this question incorrectly?" Gelpi responded "I intentionally lied because I do not value my job or what I do to feed my kids and pay my bills." ECF No. 65-6 at PageID #: 1098-99.

39. AutoZoners terminated Gelpi, Lindsey, Seeley, Anderson, and Pierce.

Seeking monetary relief, Plaintiff filed a three-count Complaint (ECF No. 1-2 at PageID #: 10-18) for employment discrimination in the Summit County, Ohio Court of Common Pleas, being Case No. CV-2012-02-0623 on February 2, 2012. Count I is for hostile work environment sexual harassment pursuant to 42 U.S.C. § 2000e-2 and Ohio Rev. Code § 4112.02(A).[5] Count II

---

[5] Plaintiff's claim for violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* was previously dismissed with prejudice. *See* Order of Partial Dismissal (ECF No. 18).

(5:12CV0570)

asserts a claim for retaliatory discrimination pursuant to Ohio Rev. Code § 4112.02(I). Count III is for intentional infliction of emotional distress under Ohio law. Defendant removed the case to this Court on March 8, 2012, on the basis of diversity and federal question jurisdiction. *See* Defendant's Notice of Removal (ECF No. 1) at ¶¶ 12, 18.

## II. Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). The non-moving party must, to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in

(5:12CV0570)

the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact.  *Id.* at 248.  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict.  *Id.*  Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact.  *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).  The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment.  *Id.*

### III.  Analysis

**A.  Count I - Hostile Work Environment Sexual Harassment**

On January 11, 2011, Plaintiff received a text message depicting another AutoZoners' employee, Robert Pierce, holding a piece of produce to his crotch as if to depict a penis while at work at AutoZone Store #720 ("Pierce Picture").  Plaintiff reported the text message to her District Manager, Dave Freeman.  ECF No. 67 at ¶ 27.  This was the first confirmed report of potential hostile or offensive conduct.

(5:12CV0570)

Immediately after Plaintiff forwarded the text message to Freeman, AutoZoners' Human Resources personnel launched an investigation into Gelpi's complaint. In response to the question "Is there anything else you want to include in this [Initial Statement]?", Plaintiff wrote, "I don't believe Scott [Lindsey] sent [the Pierce Picture] to me in a sexual manner. I believe he sent it to me in a 'can you believe what Robert did' manner." ECF No. 62-3 at PageID #: 573. During the investigation, Defendant received information indicating that Plaintiff had also forwarded sexual text messages to other AutoZoners' employees. Plaintiff ultimately admitted to forwarding a text message of a sexual nature[6] to Lindsey and intentionally lying about forwarding the text message "because [Gelpi did] not value [her] job or what [she did] to feed [her] kids and pay [her] bills." ECF No. 67 at ¶38.[7] As a result of the investigation, five (5) AutoZoners' employees – Plaintiff and four other male employees – were terminated for, amongst other things, admitting to forwarding sexual text messages to other AutoZoners.

### 1. The conduct at issue was not unwelcome.

Plaintiff alleges that she was subjected to a hostile work environment on the basis of her sex. To support a claim for hostile work environment, a plaintiff must show that the conduct at issue was unwelcome, meaning the plaintiff neither solicited nor invited the alleged conduct. Ripley v. Ohio Bureau of Employment Srvcs., No. 04AP-313, 2004 WL 2361571, at *4 (Ohio App. 10th Dist. Oct. 21, 2004). Where the plaintiff was a frequent or welcome participant in the

---

[6] ECF No. 68, which is an audio recording of an automated robot phone sex hotline. See also ECF No. 65-1 at PageID #: 931-35. "[I]nstead of usual two person phone sex[,] it was a male calling in and computer voice playing the [counterpart]." ECF No. 62-3 at PageID #: 568.

[7] Plaintiff now maintains this is "an obviously sarcastic answer." ECF No. 69 at PageID #: 1214.

(5:12CV0570)

sexual hijinx or banter at issue, it is fatal to her sexual harassment claim. *Romaniszak-Sanchez v. Intl. Union of Operating Engineers, Local 150*, 121 Fed. Appx. 140, 146 (7th Cir. 2005); *Reed v. Shepard*, 939 F.2d 484 (7th Cir. 1991); *Balletti v. Sun-Sentinel Co.*, 909 F. Supp. 1539, 1546-47 (S.D. Fla. 1995) (quoting *Henson v. City of Dundee*, 682 F.2d 897, 903 (11th Cir. 1982)); *Orton-Bell v. Indiana*, No. 1:11-cv-805-WTL-TAB, 2013 WL 74610, at *10 (S.D. Ind. Jan. 4, 2013); *Ripley*, 2004 WL 2361571, at *4.

Plaintiff invited and actively participated in the sexual jokes and banter she now claims were offensive. Plaintiff does not dispute the deposition testimony of Scott Lindsey that Gelpi invited and actively participated in the sexual joking and banter at Store #720,[8] that she regularly discussed her personal sex life with her coworkers and alleged harassers,[9] frequently told sexual jokes at work,[10] and on at least two occasions she asked Lindsey and his wife to join her at the strip club.[11]

Additionally, Plaintiff's Facebook page reveals that she is very comfortable with sexual humor and contains numerous comments and e-cards making sexual references and jokes.[12] Gelpi does not dispute that during her employment at AutoZoners, she was Facebook friends with nearly all of her former coworkers and the alleged harassers.[13] Thus, her Facebook posts

---

[8] ECF No. 63-1 at PageID #: 51-52 and 59.

[9] ECF No. 63-1 at PageID #: 55-56.

[10] ECF No. 63-1 at PageID #: 52, 53-55, and 57-58.

[11] ECF No. 63-1 at PageID #: 56-57.

[12] Facebook Data (ECF No. 65-7).

[13] ECF No. 65-1 at PageID #: 951-52.

(5:12CV0570)

and status updates are indicative of jokes her coworkers would reasonably believe she found funny, particularly given her participation in the sexual jokes and banter at work.[14]

### 2. The conduct at issue was not based on Plaintiff's sex.

In Ohio, a plaintiff must also show differential treatment of male and female employees, and that the unequal treatment would not have occurred but for the plaintiff's sex. *Hampel v. Food Ingredients Specialties, Inc.*, 89 Ohio St.3d 169, 179 (2000); *Walker v. Econ. Opportunity Planning Assn.*, No. L-11-1201, 2012 WL 2674483, at *2 (Ohio App. 6th Dist. July 6, 2012) (citing *Godsey-Marshall v. Phillipsburg*, No. 23687, 2010 WL 2017909, at *4 (Ohio App. 2nd Dist. May 21, 2010) and *Hampel*, 89 Ohio St.3d at 179); *Harter v. Chillicothe Long-Term Care, Inc.*, No. 11CA3277, 2012 WL 1997821, at *4 (Ohio App. 4th Dist. May 29, 2012) (quoting *Hampel*, 89 Ohio St.3d at 184-85); *Bowman v. AK Steel Corp.*, No. CA2010-06-141, 2010 WL 5508665, at *3 (Ohio App. 12th Dist. Dec. 29, 2010).

Plaintiff and a male Commercial Manager, John Arbaugh, would commonly talk about how they were equally offended by the comments made by the other male employees. ECF No. 67 at ¶ 16; ECF No. 65-1 at PageID #: 862 and 881. Plaintiff's deposition testimony reveals that the persons making the comments at Store #720 did not care whether they were heard by men or women.[15] Gelpi also stated the acts of intimidating conduct she witnessed were not directed at her, much less because of her sex.[16] Plaintiff testified she and several other male and female

---

[14] ECF No. 65-1 at PageID #: 968, 970-71, and 972.

[15] ECF No. 65-1 at Page ID: 873, 1020, and 1021.

[16] ECF No. 65-1 at Page ID: 879-80.

(5:12CV0570)

employees would receive the same text messages from Lindsey.[17] Gelpi even asked during her deposition "[w]hat does my sex have to do with anything?"[18] Therefore, the Court concludes the conduct at issue was not based on Plaintiff's sex.

### 3. The conduct at issue did not create a hostile work environment.

The U.S. Supreme Court has explained,

> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 273 (6th Cir. 2009) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993)). Therefore, the focus of this inquiry is: "(1) whether a reasonable person would find the environment objectively hostile, and (2) whether the plaintiff subjectively found the conduct severe or pervasive." *Gallagher*, 567 F.3d at 273 (internal quotation marks omitted). Appropriate factors for the court to consider when determining whether conduct is severe or pervasive enough to constitute a hostile work environment include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether the conduct unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23.

Plaintiff cannot show the alleged conduct was subjectively or objectively hostile. First, the conduct complained of is nearly identical to the conduct alleged in *Harter, supra*, wherein the court held that the comments, 2012 WL 1997821, at *1, were not severe and pervasive enough to

---

[17] ECF No. 65-1 at Page ID: 864-65.

[18] ECF No. 65-1 at Page ID: 218.

(5:12CV0570)

constitute a hostile work environment.  *Id.* at *7.  Here, like the plaintiffs in *Harter*, Gelpi recalls generalized statements that could be considered offensive utterances or lewd conversations, but do not give rise to an objectively hostile work environment.  Plaintiff points to only eight examples of offensive comments spread over a four year period, which, under the circumstances presented in this case, are insufficient to constitute severe or pervasive conduct.  *Id.* at *5-6 (noting five incidents over 15 months, nine incidents over 18 months, and 13 comments over seven-and-a-half years were insufficient to establish sexual harassment).

Plaintiff also cannot establish the work environment was subjectively hostile for the reasons stated in Section III.A.2.  Additionally, it is undisputed that Plaintiff began seeing a psychiatrist in October 2009.  *See* ECF No. 66 (filed under seal) at PageID #: 1127.  Despite Gelpi's claim that she was subjected to offensive conduct for nearly four years at Store #720, her psychiatric records lack any references to a hostile or offensive work environment.  Even more telling, the records discuss numerous details of Gelpi's personal life that caused her emotional anguish and stress, including harassment by a neighbor,[19] yet never mention anything about harassment at work.  In fact, on November 17, 2010—just two months before her employment with Defendant was terminated—Plaintiff told her psychiatrist that she did not want to be excused from work to deal with a psychological issue because "she prefer[ed] to keep working as this takes her mind off of troubles / stressors at home."[20]  The psychiatric records reveal that Gelpi repeatedly denied having issues at work, and typically indicated work was going well.[21]

---

[19] ECF No. 66 at PageID #: 1186.

[20] ECF No. 66 at PageID #: 1165.

[21] ECF No. 66 at PageID #: 1159-61, 1165, 1170-72, 1175, and 1183.

(5:12CV0570)

### 4. There is no basis for employer liability in the case at bar.

An employer is liable if it is negligent in handling coworker harassment. *Vance v. Ball State Univ.*, — U.S. —, —, 133 S.Ct. 2434, 2441 (2013) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 789 (1998). When a coworker is the source of the harassment, an employer is liable "if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 338 (6th Cir. 2008) (citing *Blankenship v. Parke Care Ctrs.*, 123 F.3d 868, 873 (6th Cir. 1997)) (explaining that, after the Supreme Court's decisions in *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher*, "an employer may be held liable when its remedial response is merely negligent, however well-intentioned," but applying *Blankenship* to define negligence as an employer response that "manifests indifference or unreasonableness in light of the facts").

Plaintiff argues that she reported the inappropriate conduct to her supervisors and other managers responsible for the offending employees on many occasions, however nothing was done to correct the behavior until Gelpi forwarded the text containing the Pierce Picture to Freeman. ECF No. 69 at PageID #: 1208-1209 and 1217. Plaintiff testified that she reported offensive conduct to Defendant, but provides no details about the conduct she reported,[22] and there is no record evidence to support such assertions. Moreover, the cited portion of her deposition testimony[23] does not support the argument that she reported the inappropriate conduct to her supervisors prior to forwarding the Pierce Picture to her District Manager. Rather, it shows she asked for a transfer from Store #720 on multiple occasions. Thus, the evidence in the

---

[22] *See, e.g.*, ECF No. 65-1 at PageID #: 862-63.

[23] ECF No. 69 at PageID #: 1217 n. 58, which cites ECF No. 65-1 at PageID # 1016-20.

(5:12CV0570)

record establishes that Defendant had no reason to know of the allegedly offensive conduct, other than the text containing the Pierce Picture, and upon learning of it took swift remedial action designed to end any offensive or harassing conduct.

The Court holds that Plaintiff has not established a claim for sexual harassment under Ohio law.  She cannot show that the allegedly offensive conduct was unwelcome, based upon her sex, or sufficiently severe or pervasive to alter her work conditions.  Defendant received a complaint of potential sexual harassment from Plaintiff, investigated the complaint, and properly determined that Gelpi and four other employees who had also forwarded sexual text messages and jokes should be terminated.   Summary judgment on Count I is granted.

### B. Count II - Retaliatory Discrimination

Plaintiff argues that she was retaliated against for complaining about perceived sexual harassment and hostile work environment.  Ohio Rev. Code § 4112.02(I) makes it unlawful

> [f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice . . . or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code.

The Ohio Supreme Court has stated that "federal case law interpreting Title VII of the Civil Rights Act of 1964 . . . is generally applicable to cases involving alleged violations of R.C. Chapter 4112." *Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civil Rights Comm'n*, 66 Ohio St.2d 192, 196 (1981).

The Supreme Court recently clarified that "Title VII retaliation claims must be proved according to traditional principles of but-for causation." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, — U.S. —, —, 133 S.Ct. 2517, 2533 (2013).  When no direct evidence of retaliation is

(5:12CV0570)

presented, a plaintiff may prove the claim with circumstantial evidence under the familiar burden-shifting framework of *McDonnell Douglas*.  See Spengler v. Worthington Cylinders, 615 F.3d 481, 491 (6th Cir. 2010) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981)).

To establish a *prima facie* case of retaliation based on circumstantial evidence, Plaintiff must show:  (1) she engaged in protected activity; (2) Defendant knew of the protected activity; (3) Defendant subsequently took an adverse, retaliatory action against her; and (4) Plaintiff's protected activity was the but-for cause of her termination.  Nassar, 133 S.Ct. at 2533; Greer-Burger v. Temesi, 116 Ohio St.3d 324, 327 (2007).

Defendant is entitled to summary judgment on the retaliatory discrimination claim for the reason that Plaintiff cannot establish a *prima facie* case of retaliation because she cannot establish the causation element of her *prima facie* case.  Even assuming that Plaintiff has met her burden of establishing a *prima facie* case of discrimination, Defendant is still entitled to judgment because Plaintiff has not shown genuine issues of material fact on whether the proffered legitimate, nondiscriminatory reasons for Defendant's actions were pretextual.  Plaintiff  was terminated because she forwarded inappropriate sexual text messages to her coworkers, and she lied during a human resources investigation.  Moreover, Plaintiff did not offer any evidence indicating the decision-maker, John Morgan, did not reasonably believe that her actions violated Company policies and the Code of Conduct.  Summary judgment is granted on Count II.

(5:12CV0570)

### C. Count III - Intentional Infliction of Emotional Distress

Finally, Plaintiff argues that Defendant subjected her to the infliction of serious emotional distress, in violation of state tort law. ECF No. 69 at PageID #: 1226-27. To establish a claim for intentional infliction of emotional distress under Ohio law, a plaintiff must prove facts showing that (1) the defendant either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions were the proximate cause of the plaintiff's psychic injury; and (4) the mental anguish suffered by the plaintiff was serious. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995) (citing *Hanly v. Riverside Methodist Hosp.*, 78 Ohio App.3d 73, 82 (1991)).

An employer is not liable for independent self-serving acts of his employees which in no way facilitate or promote his business. *Byrd v. Faber*, 57 Ohio St.3d 56, 58 (1991). Upon thorough review of the record, the Court concludes that Plaintiff has failed to establish that the alleged actions of her coworkers (Lindsey, Seeley, Anderson, and Pierce) occurred within the scope of their employment, or facilitated Defendant's business. *Bowman*, 2010 WL 5508665, at *4 (affirming grant of summary judgment for employer on infliction of extreme emotional distress claim). Thus, there is no basis for liability for intentional infliction of emotional distress in the case at bar.

Moreover, Plaintiff has failed to establish a claim for intentional infliction of emotional distress as a matter of law because Defendant's conduct was not extreme and outrageous. *See Jackson v. City of Wooster Bd. of Educ.*, 29 Ohio App.3d 210, 211-12 (1985). The conduct certainly does not rise to the level of being so extreme and outrageous "as to go beyond all

(5:12CV0570)

possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Long v. Ford Motor Co.*, 193 Fed. Appx. 497, 503 (6th Cir. 2006) (quoting *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 6 Ohio St.3d 369 (1983)).

Finally, Plaintiff's psychiatric records contain no evidence to support a claim of intentional infliction of emotional distress. *See* ECF No. 66 (filed under seal) at PageID #: 1157-59, 1161-63, 1168-70, 1173, and 1181. Summary judgment is granted as to Count III.

### IV.  Conclusion

Viewing Plaintiff's probative evidence and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff, the Court concludes that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 62) is granted. Final judgment is entered in favor of Defendant AutoZoners, LLC and against Plaintiff Dawn Gelpi on all three counts of the Complaint (ECF No. 1-2 at PageID #: 10-18).

IT IS SO ORDERED.

| | |
|---|---|
| March 24, 2014 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |